NUMBER 13-05-719-CR 


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MICHAEL LEE WILSON A/K/A 

MICHAEL LEE LEWIS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 180th District Court 

of Harris County, Texas

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Rodriguez



 Appellant, Michael Lee Wilson a/k/a Michael Lee Lewis, was charged by
indictment with the felony offense of murder. The indictment alleged that a deadly
weapon, namely, a firearm, was used in the commission of the offense. Appellant
entered a plea of not guilty. A jury found appellant guilty of murder and assessed
punishment at 45 years' confinement in the Texas Department of Criminal Justice,
Institutional Division. Appellant was sentenced in accordance with the jury's verdict. 
By six points of error, appellant contends the trial court erred in overruling his
objections to the State's final argument, improperly allowing the State to collaterally
impeach him, overruling his motion for mistrial, and overruling his objection to
testimony being read to the jury during deliberations at the punishment phase. We
affirm.

I. Challenges to the State's Jury Argument


 By his first and fourth points of error, appellant complains that the trial court
erred in overruling his objections to portions of the State's jury argument at the guilt-innocence stage of the trial.

A. Appellant's Drug Use


 In his fourth point of error, appellant claims that the trial court erred in overruling
his objections to the State's jury argument making reference to appellant's drug usage.

1. Applicable Law and Standard of Review


 Permissible areas of jury argument include the following: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answer to argument of
opposing counsel; and (4) plea for law enforcement. Wesbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000); see Washington v. State, 668 S.W.2d 715, 718
(Tex. App.-Houston [14th Dist.] 1983, pet. ref'd) (providing that areas are applicable
to both the guilt-innocence and punishment phases of a criminal trial). Counsel is
generally afforded wide latitude in drawing inferences from the record, as long as the
inferences are reasonable and offered in good faith. Coble v. State, 871 S.W.2d 192,
205 (Tex. Crim. App. 1993) (en banc). A prosecutor, however, cannot use closing
argument to place matters before the jury that are outside the record and prejudicial
to the accused. Everett v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). 
References to facts that are neither in evidence, nor inferable from the evidence, are
improper. Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

 When reviewing alleged error in a jury argument, it is important to keep in mind
that every alleged error must be viewed in the context of the entire argument, and that
isolated sentences taken out of context may take on a meaning different from that
understood by the jury. Drew v. State, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987)
(en banc). Even when an argument is improper, reversible error does not occur unless,
in light of the record as a whole, the argument is extreme or manifestly improper,
violative of a mandatory statute, or injects new facts harmful to the accused into the
trial proceeding. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000);
Todd v. State, 598 S.W.2d 286, 296-97 (Tex. Crim. App. [Panel Op.] 1980). To
warrant reversal, the remarks must have been a willful and calculated effort on the part
of the State to deprive appellant of a fair and impartial trial. Cantu v. State, 939
S.W.2d 627, 633 (Tex. Crim. App. 1996).

 A trial court's denial of an objection to argument outside the record is non-constitutional error and is analyzed under Texas Rule of Appellate Procedure 44.2(b). 
Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); see Tex. R. App.
P. 44.2(b). A criminal conviction should not be overturned for non-constitutional error
if the appellate court, after examining the record as a whole, has fair assurance the
error did not influence the jury or had but a slight effect. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998); King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997). The following factors are used to analyze the harm associated with
improper jury argument: (1) the severity of the misconduct, (2) curative measure, and
(3) the certainty of the punishment assessed absent the misconduct--likelihood of the
same punishment being assessed. Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998); Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 1997).

2. Analysis


 During the State's final argument at the guilt-innocence stage of the trial, the
following argument and objection occurred:

 Prosecutor: [The victim] didn't rob the defendant. He didn't
shoot the defendant. The defendant was just too
high on drugs to realize that.


 Defense Counsel: Excuse me, Your Honor. There is no evidence that
he was high on drugs at all.


 The Court: Lawyer's arguments are not evidence, ladies and
gentlemen.


 Defense Counsel: I object to the argument. There is no evidence in this
case - record of any intoxication on the night of
January 12th. There is none. Zero.


 The Court: Your objection is overruled.


 Later, appellant made the following objections to the State's jury argument:

 Prosecutor: So, you heard from Martin, Oran and Vakesia and
they said, [w]e picked him up and he was terrified
and, oh, we had the scene acted out and it was
beautiful and he was jerking around. He was so
afraid that they were afraid. And we asked each one
of them, Did you ask him what was wrong? And
what did they tell you? No. Oh, please. Your good
buddy, your best friend, the person you come here to
testify for and you never ask him, Man, what is
wrong with you? Why are you acting this way? 
They didn't have to. They knew why he was acting
this way. They are his friends. They know that that
is what he does when he is high on drugs. And how
do they know that?


 Defense Counsel: Your Honor, there's no evidence of that.


 The Court: Lawyer's arguments are not evidence. Your
objection is overruled.


 Prosecutor: How do we know that? Because the State's
witness, Calvin Anderson, the drug dealer, he
testified, I deal drugs. I am around drugs. I've seen
people high on drugs. And that's how he acts. I
saw him the night he said that he was so afraid of
Larry. He was high. Now, did he also say, I've
never seen him use drugs? He sure did. Would it
have helped my case if he would have gotten up
there and said, Oh, I've seen him use drugs all the
time? Sure, it would have helped. Unfortunately, he
hadn't seen him use them. But he knows what a
user looks like and so does Vakesia and Martin and
Oran.


 Defense Counsel: There is no evidence of that, whatsoever.


 The Court: Lawyer's arguments are not evidence. Your
objection is overruled.


 Appellant argues that the statements about him being high on drugs were
outside the record, not a reasonable deduction from the evidence, and injected new
facts into the trial that were harmful to him. However, there was evidence introduced
during the course of the trial that appellant was high on drugs the night of the
shooting. Appellant's witnesses described appellant as acting "paranoid" and
"spooked" the night before the murder. Another witness testified that while he did not
see appellant ingest drugs, he had seen appellant high on drugs in the past, and he
believed appellant was high the night of the shooting. We conclude the argument
made by the prosecutor was both a summation of the evidence and a reasonable
deduction from the evidence--two of the proper categories for jury argument. See
Wesbrook, 29 S.W.3d at 115. Thus, the trial court did not err by overruling
appellant's objections.

 Moreover, even if we were to conclude the State's argument was improper, the
trial court's error in overruling appellant's objections was harmless. See Tex. R. App.
P. 44.2(b); Martinez, 17 S.W.3d at 692-93. Considering the first factor--the severity
of the misconduct--the argument was brief in the context of the entire argument, and,
as determined above, did not set out new facts that unfairly tipped the scales in the
State's favor as urged by appellant. Rather, the State argued inferences from facts
in evidence. We cannot conclude that the State intentionally attempted to taint the
trial process with improper argument. Hawkins, 135 S.W.3d at 77. Because we
conclude that the inferences are reasonable and offered in good faith, we will afford
wide latitude in drawing inferences from the record. See Coble, 871 S.W.2d at 205. 
In regard to the second measure--steps taken to cure the error--after each objection,
the trial court informed the jury that lawyer's arguments are not evidence. See id. 
Finally, in considering the third factor--the certainty of the punishment assessed
absent the misconduct--in light of punishment being assessed at 45 years, which is
in the middle of the range of punishment, it could be concluded that the complained-of
statements had little effect on the jury. See id. Viewed in the context of the entire
argument, because the record provides fair assurance that the argument about which
appellant complains did not influence the jury or had but a slight effect on it,
appellant's criminal conviction should not be overturned for non-constitutional error,
if any. See Johnson, 967 S.W.2d at 417; King, 953 S.W.2d at 271; Drew, 743
S.W.2d at 220.

 We overrule appellant's fourth point of error.

B. Burden of Proof for Self-Defense Theory


 In point of error one, appellant contends that the trial court erred in overruling
his objection that the State misrepresented the law when it stated its burden of proof
regarding appellant's self-defense theory.

1. Applicable Law and Standard of Review


 It is error for the State to present a statement of the law that is contrary to that
presented in the charge to the jury. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim.
App. 1990) (en banc). Where the misstatement of law directly impacts the jury's
perception of the burden to which the State is to be held before a verdict of guilt can
be returned, it is reversible error, subject only to a harmful error test. Id.

2. Analysis


 During the State's final argument at the guilt-innocence stage of the trial,
appellant made the following objections:

 Prosecutor: Remember, for defensive issues like this, the State
has the burden of persuasion. We don't have to
ultimately refute the defensive position.


 Defense Counsel: Your Honor, I object. The State has the burden of
disproving self-defense beyond a reasonable doubt. 
That's within the charge.


 The Court: State bears the burden of persuasion. Your
instructions are in your charge, ladies and gentlemen,
my written instructions.


 Prosecutor: You will actually find that in the charge. We have
the burden of persuasion. This is very different from
beyond a reasonable doubt.


 Defense Counsel: No, Your honor. That's a misstatement of the law.


 Defense Counsel: Misstatement of the law.


 The Court: Excuse me. To the extent that conflicts with my
instructions, your objection is sustained.


 Defense Counsel: Ask the Court to instruct the jury to disregard the
Prosecutor's last remark.


 The Court: Disregard.


 Defense Counsel: Ask for a mistrial.


 The Court: It is denied.

 Later, during the State's closing final jury argument, appellant made the
following objection:


 Prosecutor: The State has to prove that this man is a murderer
and you heard evidence that is exactly what he is. 
However, because he brought up self-defense, we
now have the burden of persuasion. The burden of
persuasion. That means we don't have to bring you
evidence that he didn't - that he didn't have self-defense. We have to persuade you -


 Defense Counsel: Your Honor, again, the burden of proof, that is not
self-defense.


 The Court: Take your instructions from the Court, ladies and
gentlemen, written instructions.


 Prosecutor: Please read those instructions. It says: Burden of
persuasion. We have to persuade you that his
argument is bogus, that he doesn't have the right to
self-defense. And you heard not just from the
State's witnesses but from his own witnesses. He
doesn't have that. He doesn't have self-defense.


 Specifically, appellant claims that the prosecutors misstated the law. However,
the State is not required to rebut a theory of self-defense with evidence beyond a
reasonable doubt. See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App.
1991) (en banc) (rejecting the argument that the State had to disprove a self-defense
theory with evidence beyond a reasonable doubt); Williams v. State, 911 S.W.2d 191,
194 (Tex. App.-Houston [1st dist.] 1995, pet. ref'd) (same). Instead, the State has
the burden of persuasion in disproving evidence of self-defense. Saxton, 804 S.W.2d
at 913; Juarez v. State, 961 S.W.2d 378, 385 (Tex. App.-Houston [1st Dist.] 1997,
pet. ref'd).

 In this case, neither statement about which appellant complains is a
misstatement of the burden of proof. It is not error for the State to quote or
paraphrase the jury charge. Whiting, 797 S.W.2d at 48. Each side is permitted to
discuss the facts admitted into evidence "and to give a reasonable explanation of the
law applicable to that case." Provost v. State, 631 S.W.2d 173, 176 (Tex.
App.-Houston [1st Dist.] 1981, pet. ref'd). Legal concepts may be explained as long
as such examples do not constitute statements of law contrary to that contained in
the charge. Id. Because the State's argument was not a misstatement of the law or
contrary to the charge, the trial court did not err in overruling appellant's objections to
these portions of the State's closing argument. Accordingly, appellant's first point of
error is overruled.

II. Collateral Impeachment


 Appellant contends by his second point of error that the trial court erred in
improperly allowing the State to collaterally impeach him. However, appellant provides
no argument, other than referring to "collateral impeachment," and does not cite to
specific authority to support his assertion. In accordance with rule 38.1(h) of the
Texas Rules of Appellate Procedure, we will only consider contentions that are
supported by clear and concise arguments with appropriate citations to authorities and
to the record. Tex. R. App. P. 38.1(h). Because this issue is inadequately briefed, we
overrule appellant's second issue.

III. Refusal to Grant Mistrial After Questions Regarding Drug Dealing


 By his third point of error, appellant contends that his substantial right to a fair
trial was abrogated by the trial court's refusal to grant his request for mistrial after the
State's attempts to inject evidence that appellant was either a drug user or that a drug
deal had occurred at his barbershop. In support of this contention, appellant argues
that rule 403 prohibits the introduction of the proffered testimony because it was no
more than an impermissible inference of character conformity and its admission is
therefore barred by rule 404(b). See Tex. R. Evid. 403, 404(b).

 Appellant complains about the following exchanges that took place during trial:

 Prosecutor: You know it was a robbery? Are you sure it wasn't
a drug deal?


 Defendant: We was [sic] gambling. No, ma'am.


 Prosecutor: Couldn't be a drug deal?


 Defendant: No, ma'am. 


 Prosecutor: Now, some of those guys in that room, are you
aware of whether or not they deal in drugs?


 Defendant: No ma'am. We was [sic] gambling.


 Prosecutor: Okay. No, you are not aware, or, no, they don't deal
in drugs?


 Defendant: Excuse me?


 Defense Counsel: Your Honor, could we approach the bench?


 The Court: Come on up. 

 (At the Bench, on the record.)


 Defense Counsel: Impeaching him with whether or not people inside
the shop possible [sic] had - were dealing drugs is
improper cross-examination. It is collateral
impeachment. He's denied that they were dealing
drugs that night. The fact that some of those people
may have drug convictions is irrelevant.


 The Court: I don't think she's asking that. She can't ask if those
people inside had drug convictions. I don't think
that's really relevant, but she can ask what was
going on in there, what he saw.


 Defense Counsel: But anything else is not relevant.


 Prosecutor: All I am trying to get in, there is [sic] all the different
theories on the robbery version.


 The Court: You are not going to say people there with drug
convictions, Counsel.


 Prosecutor: I am just asking that he is aware that they deal in
drugs.


 Defense Counsel: She already asked that.


 The Court: Okay. Your objection is overruled.


* * * * *


 Prosecutor: You been [sic] around drugs, haven't you, sir?


 Defendant: Yes.


 Defense Counsel: Your Honor, speculation.


 The Court: It is overruled.


* * * * *


 Prosecutor: In your personal knowledge, are there drugs that
have been sold in front of that barber shop before?


 Defendant: No, I don't know.


 Prosecutor: You don't know? Have you ever sold drugs at the
barber shop?


 Defendant: I haven't.


 The following exchange took place when the State called Officer Lloyd Hicks as
a rebuttal witness:

 Prosecutor: And what was the purpose of picking [Patrick Davis]
up?


 Hicks: He was going to take me to purchase some crack
cocaine.


 Prosecutor: And, so after you picked him up, what did you do?


 Hicks: We went and purchased some crack cocaine.


 Defense Counsel: Your Honor, may we approach the bench?


 The Court: No.


* * * * *


 Hicks: We went to purchase some crack cocaine, but the
person that lived at the home was not home.


 Defense Counsel: Your, [sic] Honor, I don't see the relevancy.


 The Court: Sustained.


 Prosecutor: And, so, then what happened?


 Defense Counsel: Object to the whole line of questioning.


 The Court: What's the relevance?


 Prosecutor: Your Honor, the gentleman, Patrick Davis, went to
the defendant's barber shop and got crack cocaine
and brought it to this officer.


 The Court: And that is relevant because?


 Prosecutor: That is [sic] alternative theory to his robbery defense,
Your Honor.


 The Court. [Defense Counsel], your objection is sustained.


 Defense Counsel: Ask the Court instruct the jury to disregard. 


 The Court: Jury disregard.


 Defense Counsel: Ask for a mistrial, Your Honor.


 The Court: It's denied.


 Prosecutor: So Officer . . . Davis, do you work the area around
this defendant's -


 Defense Counsel: Excuse me, Your Honor. I object to any further
testimony from Officer Hicks.


 The Court: That's overruled.


* * * * * 


 Prosecutor: Is there a narcotics problem in that area?


 Defense Counsel: Your Honor, I object to that. It is not relevant.


 The Court: Sustained.


 Prosecutor: Your Honor, the evidence has indicated that he
didn't -- he was not aware of a narcotics problem
outside of that - his barber shop.


 The Court: Your objection is sustained, [Defense Counsel].


 Defense Counsel: Ask for an instruction to disregard the last
question.


 The Court: Jury disregard.


 Defense Counsel: Ask for a mistrial, Your Honor.


 The Court: It's denied.

 

 Appellant's point of error must comport with his objection at trial. Guevara v.
State, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003). Appellant's basis for objection
at trial was relevance as to other people having drug convictions and speculation as
to whether appellant had been around drugs. All other objections made by defense
counsel during this complained-of line of questioning were sustained by the trial court.

 On appeal, appellant contends that the State was attempting to use the
evidence as a basis for alleging appellant was on drugs when he shot the deceased. 
He claims a rule 403 and rule 404(b) objection on that basis. This claimed error,
however, does not comport with the objections at trial. See id. Therefore, appellant
has waived review of this point. See Tex. R. App. P. 33.1(a) (providing that to
preserve a complaint for appellate review, a party, among other things, must present
an objection stating the specific grounds for the ruling desired). Accordingly,
appellant's third point of error is overruled.




IV. Testimony Read Back to the Jury


 In his final two points of error, appellant argues that the trial court erred by
overruling his objection to, and by failing to limit the scope of, the medical examiner's
testimony read back to the jury during punishment deliberations. Appellant claims the
trial court violated article 36.28 of the Texas Code of Criminal Procedure. See Tex.
Code Crim. Proc. Ann. art. 36.28 (Vernon 2006).

A. Applicable Law and Standard of Review


 Article 36.28 provides, in pertinent part, as follows:

 In the trial of a criminal case in a court of record, if the jury disagree as
to the statement of any witness they may, upon applying to the court,
have read to them from the court reporter's notes that part of such
witness testimony or the particular point in dispute, and no other . . . .


Id. When the jury asks that certain disputed testimony be re-read, the court must first
determine if the request is proper under article 36.28. Brown v. State, 870 S.W.2d
53, 55 (Tex. Crim. App. 1994) (en banc); Iness v. State, 606 S.W.2d 306, 314 (Tex.
Crim. App. 1980). If it is proper, the trial court must then interpret the
communication, decide what sections of the testimony will best answer the inquiry,
and limit the re-reading accordingly. Brown, 870 S.W.2d at 55; Iness, 606 S.W.2d
at 314 ("It is well settled that the trial court may allow a disputed portion of a witness'
testimony to be read to the jury and refuse additional testimony."). The trial court's
decision shall not be disturbed unless a clear abuse of discretion and harm is shown. 
Brown, 870 S.W.2d at 55.




B. Cross-Examination of Medical Examiner


 During the jury's punishment deliberations, the jury sent out several notes,
including two that referred to the medical examiner's testimony regarding the angle of
two particular bullet wounds. The first of those notes: "We need the M.E.'s
testimony describing the angle of bullet wound A & C. Lawyer -> Prosecutor." The
jury later sent out a form filled out by the foreman that read as follows: "Name of
witness: Michael Lee Wilson; Lawyer questioning witness: Prosecutor; Point or
statement in dispute: The angle of bullet wound 'A' and 'C'."

 Appellant first argues that the reading of only the direct examination testimony
of the medical examiner without the cross-examination testimony was prejudicial to
appellant and could have been perceived as a comment on the weight of the evidence. (1) 
However, the jury requested the medical examiner's testimony provided on direct
examination only, not on cross-examination. Where the jury indicates a specific and
limited portion of testimony to be read, as in this case, the trial court does not abuse
its discretion by only providing the requested information. Robison v. State, 888
S.W.2d 473, 481 (Tex. Crim. App 1994); see Iness, 606 S.W.2d at 317.

C. Medical Examiner's Testimony Regarding Angle of Bullet Wounds


 Appellant also complains that the following sections of testimony read back to
the jury exceeded the scope of the jury's question about gunshot wounds A and C:

 Prosecutor: [B]efore I show photographs, let me ask you, the one
to the hand, the one to the chest, excuse me, the
one to the abdomen that left through the back of the
deceased and the one through the abdomen, are all
of those gunshot wounds consistent from a shooter
being to - slightly to Larry King's right, the angle and
exit entry, for example the abdomen was here, and
then out the back, would that be consistent with a
shooter being slightly to Larry King's right?


 Medical Examiner: Um, at least two of the wounds, that's true. The
ones through the hands, really hard to tell. The one
through the torso, both of those wounds to the
torso, the direction of them goes from right to left in
both cases.


 Prosecutor: So, that would indicate to you, at least for those two
gunshot wounds, that the shooter was on Larry
Kings' left?


 Medical Examiner: To Larry King's right because the trajectory again
from right to left, in other words, going from the
right side of the body to the left side of the body.


* * * * *



 Prosecutor: The two prior bullets that actually struck his body,
the one that hit the abdomen and went out the back
and the one that went through the chest and
abdomen, did that strike any vital organs?


 Medical Examiner: Yes, the one that actually went through his chest
and out the side of his - side of his abdomen,
actually did perforate his heart and that was certainly
a fatal wound.


* * * * *



 Prosecutor: Your Honor, may I use Ms. Hygh again?


 The Court: Yes, ma'am.


 Prosecutor: Stand over there Ms. Hygh. if you would go down
on your knees again. But I hate to ask, but would
you lay face down on the floor facing to your left and
your arms tucked under you.


 Now, Doctor, you said earlier the gunshot, two of
the gunshot wounds to Larry King's front, the
abdomen shot and the chest shot, were consistent
with someone shooting from Larry King's right,
correct?


 Medical Examiner: Correct.


 Prosecutor: The gunshot wounds to the back of Larry King's
body, the gunshot wound that went in his shoulder
- and I am touching the upper right portion of Ms.
Hygh's back - that ended up lodged in Larry King's
elbow, that gunshot wound, would that be
consistent from someone firing at this angle?


 Medical Examiner: No, you would have to be a little bit toward me, have
to move a little toward me.


 Prosecutor: Little more towards the left?


 Medical Examiner: Toward the left. And her - she couldn't have her
elbow like that. it would have to be down like this. 
Her hand would have to be down like this.


 Prosecutor: Ms. Hygh, if you would -


 Medical Examiner: Put your arm straight out. The reason I say that,
because the bullet is actually lodged in the forearm
right here.


 Prosecutor: Would it be possible for the hand to still be up under
him?


 Medical Examiner: That hand could be under, but the forearm would
have to be down - below the - below the upper arm.


 Defense Counsel: Your Honor, I believe - I object to this testimony. It
exceeds the question.


 The Court: She can't take down the objection.


 Defense Counsel: I understand, Your Honor. It exceeds the scope of
the question.


 The Court: Your objection is overruled.


 Assuming without determining that the trial court abused its discretion in having
the medical examiner's testimony regarding the paths of all bullets read back to the
jury rather than only the testimony regarding the paths of bullets A and C, we,
nonetheless, conclude that the substantial rights of appellant were not violated by the
trial court's order. See Tex. R. App. P. 44.2(b); Mosley, 983 S.W.2d at 259.

 In addition to the challenged testimony, the court reporter also read back to the
jury appellant's testimony regarding the firing of the gun and the direction from which
all shots were fired. The jury also asked for the medical examiner's report and
photographs. The report contained a detailed description of each of the six gunshot
wounds including where each bullet entered the body and where each bullet exited
from or lodged in the victim's body. Although the testimony re-read to the jury
included questions and answers which did not directly show the angles of bullets A
and C, similar testimony had been presented through the reading of appellant's
testimony and through the medical examiner's report. Thus, we conclude that the
substantial rights of appellant were not violated. See Tex. R. App. P. 44.2(b); Mosley,
983 S.W.2d at 259. Points of error five and six are, therefore, overruled.

V. Conclusion


 Accordingly, we affirm the judgment of the trial court.


 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 23rd day of August, 2007.

1. At trial, appellant's counsel objected that, by reading back only the Prosecutor's questions, the
jury did not get a fair rendition of what the testimony was and the answers to the questions. We will
construe this liberally to include contentions now on appeal, that it is prejudicial and a comment on the
weight of the evidence.